THE STATE OF KANSAS, *Appellee,* v. W. M. SMITH, *Appellant.*

No. 17,382.

SYLLABUS BY THE COURT.

1. PERJURY—*Information—Prosecutor's Belief that Defendant Knew of Violation of Gambling Laws.* In an information for perjury, committed in testifying before a justice of the peace in a proceeding under section 2732 of the General Statutes of 1909, it is not necessary to allege that the county attorney who subpœnaed the defendant to testify before the justice had reason to believe that the defendant knew of violations of the laws against gambling.

2. ———— *Variance—Allegations and Proof.* In a prosecution for perjury it is sufficient if the proof conform substantially to the charge.

3. ———— *"Proceeding" — Inquisition — Violation of Gambling Laws.* The procuring of testimony of one believed by the county attorney to have knowledge of violations of the gambling laws, by causing such person to appear before a justice of the peace under section 2732 of the General Statutes of 1909, is a "proceeding" within the meaning of the perjury statute (Gen. Stat. 1909, § 2640).

4. ———— *Instructions — Duty of Judge — Individual Duty of Each Juror.* An instruction that before the jury can convict they must find the defendant guilty beyond a reasonable doubt, and that "a reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they can not say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it," is ordinarily a sufficient admonition as to the separate individual duty of each juror.

Appeal from Linn district court. Opinion filed April 8, 1911. Affirmed.

*J. I. Sheppard, John O. Morse,* and *J. E. Latimer,* for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* as-

sistant attorney-general, *Charles D. Shukers*, special assistant attorney-general, and *John A. Hall*, county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.:   The county attorney of Linn county, acting under section 2732 of the General Statutes of 1909 (Laws 1907, ch. 263, § 5), issued a subpœna for the appellant to appear before a justice of the peace and tell what he knew about the violation of the laws of the state relating to gambling.  After being duly sworn by the justice the appellant testified that he had not participated in a crap game within the past two years and did not know of any persons who had done so; that the only dice he had seen on Sunday, October 24, 1909, was a pair he saw Ollie Brooks have, and that he told Brooks to throw them out in the street, which was done; that he was not present at any game where dice were used on Sunday, October 24, 1909, and was sure he did not see any other persons playing any game with dice or doing any gambling with dice on that day; that he was not present on that day where any other persons bet any money to be dicided by the throw of dice in any manner; that he was sure he was not present at any place where any game was being played with dice on Sunday, October 24, 1909, near the so-called McCown rock quarry, or at any other place east of the St. Louis & San Francisco Railroad Company, north of Pleasanton, Kan.  This testimony was given October 30, 1909.  On January 10, 1910, the county attorney filed a complaint in a justice court charging the appellant with betting money and property upon the result of throwing dice, and upon the game of chance called shooting craps, in Linn county, on October 24, 1909. On the same day the appellant entered a plea of guilty to this charge.  Afterward an information was filed in the district court charging the appellant with perjury

in the testimony given before the justice on October 30, 1909, assigning several different false statements as having been willfully made by him therein. A motion to quash was denied, and upon the trial the state offered in evidence the testimony before the justice, the complaint and plea of guilty on the 10th day of January, 1910, and the testimony of a large number of witnesses.

At the close of its evidence the state elected to rely for conviction upon the alleged falsehood that the appellant was not present at any point near the so-called McCown rock quarry, east of the St. Louis & San Francisco railroad track, north of Pleasanton, in Linn county, on October 24, 1909, where any person or persons were engaged in playing the gambling game called shooting craps, and upon certain exhibits and the testimony of certain named witnesses.

The court instructed the jury, among other things, that "a reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they can not say that they feel an abiding conviction to a moral certainty of the truth of the charge." The appellant requested the court to instruct that "in order to find a verdict of guilty it is necessary that each one of the jurors, after considering the evidence and conferring with other members of the jury, be satisfied beyond a reasonable doubt of the truth of every material allegation of the information," which instruction was refused. A motion for a new trial was denied.

The appellant complains that the trial court erred in denying his motion to quash, on the ground that the information did not charge a public offense and on the ground that it was bad for duplicity; in the admission of certain evidence; in denying the appellant's motion to direct a verdict of not guilty; in refusing and giving certain instructions, and in denying motions for a new trial and in arrest of judgment.

The information is very full and complete and satisfies even all the technical common-law requirements, and is not bad for duplicity, because the various assignments of perjury all occurred at one time and in one proceeding. The appellant made and signed the testimony at one sitting, and it is much the same as an affidavit. (2 Arch. Crim. Pr. & Pl., J. N. Pom. Notes, p. 1737.)

It is urged that the information is bad for failure to state that when the county attorney issued his subpœna for the appellant to appear before the justice he, the county attorney, had reason to believe that the defendant knew of violations of the laws against gambling. It is argued that unless the county attorney had reason so to believe he was not authorized by the statutes to proceed, and that otherwise the proceeding would be *ultra vires* and void. Section 2732 of the General Statutes of 1909 (Laws 1907, ch. 263, § 5) provides that if the county attorney shall be notified by any officer or other person or shall have knowledge of any violation of the laws of this state relating to gambling it shall be his duty forthwith diligently to inquire into the facts of such violation, and for that purpose he is authorized to cause subpœnas to be issued for such persons as he shall have reason to believe have any information or knowledge of such violation. As the county attorney is a sworn officer we can not presume that he acted arbitrarily or capriciously, but on the contrary we ought to, and do, presume that he acted in view of his official authority and duty, and that he did in fact have reason to believe that the appellant had such knowledge. We do not think, therefore, that the omission of this allegation from the information rendered it subject to the motion to quash.

The complaints concerning the introduction of evidence have reference to the dockets and proceedings touching the matters in the justice court, and we think the evidence was properly admitted.

The abstract does not disclose the evidence given by the witnesses said to be relied on for proof that the appellant was present at the time and place charged when other persons were engaged in gambling. Without this testimony the mere showing that the appellant had pleaded guilty to the offense of gambling at some undisclosed point in Linn county on the same day would be entirely insufficient to support a conviction. But upon referring to the original record it appears beyond all question, from the evidence of James Parsons, Tom Leigh, Tom Lloyd, White Brockett and Ollie Brooks, that on the 24th day of October, 1909, at the point referred to in the examination before the justice, the appellant was present where a most flourishing game for money was in progress; that a circle of some fifteen interested persons was formed, and that the appellant was standing on the north of this circle and the persons present were but a very few feet apart.

In the oral argument it was urged that a variance exists between the charge and the proof in respect to the description of the place where the gambling took place. The assignment of perjury relied on was "that the said W. M. Smith was not present at any point near the so-called McCown rock quarry, east of the St. Louis & San Francisco railroad track, north of Pleasanton, in Linn county, Kansas, on October 24, 1909, where any person or persons were engaged in playing the gambling game called 'shooting craps.'" In the election this assignment was stated the same as in the information. Turning to the answer given by the appellant before the justice of the peace we find that it was as follows:

"Ques. Are you sure that you were not present at any place where any game was being played with dice on last Sunday near the so-called McCown rock quarry, or at any other place east of the St. Louis & San Francisco Railroad Company, and north of Pleasanton, Kan.? Ans. I am sure."

It will be observed that in the actual testimony given

by the appellant he did not, so far as this assignment
is concerned, swear touching any place east of the St.
Louis & San Francisco railroad track, but east of the
company, and this question and answer were not con-
fined to Linn county nor to a gambling game.  There
were other statements in the testimony on which per-
jury might well have been assigned and on which proof
might have been made beyond peradventure.  The ques-
tion is whether, having relied on this assignment, the
state broadened the same and created a material vari-
ance by the language used in the information and in
the election by adding the name of the county and by
adding the element of a gambling game, which is not
included in the term "game played with dice."  The
rule is that the proof must conform substantially to the
charge, but that a literal conformity is not required.
(2 Whar. Crim. L., 10th ed., § 1307; 2 Ell. Ev. § 200.)
But is this a substantial conformity?  The appellant
swore that he was sure he was not present at any place
where any game was being played with dice on the
Sunday in question, near the so-called McCown rock
quarry or at any other place east of the St. Louis & San
Francisco Railroad Company and north of Pleasanton,
Kan.  Not only did the information and the election
add to this assignment of perjury the element of gam-
bling, the fact that the location was in Linn county, but
the court instructed the jury that in order to find the
defendant guilty it must appear beyond a reasonable
doubt that the appellant falsely testified that he was
not present "at any point near the so-called McCown
rock quarry, east of the St. Louis & San Francisco
railroad tracks north of Pleasanton, in Linn county,
Kansas, on October 24, 1909, where any person or per-
sons were engaged in playing the gambling game called
'shooting craps.' "  The writer is of the opinion that
the proof did not substantially conform to the charge,
and that the case should be reversed for that reason.
But my brethren are of the belief that, as the appellant

swore before the justice that he was sure he was not present at any place where any game was being played with dice on the day in question near the so-called McCown rock quarry, the proof amounts to a substantial conformity.

It is urged that the alleged false testimony was not given in any "cause, matter or proceeding" within the perjury statute. Section 2640 of the General Statutes of 1909 (Gen. Stat. 1868, ch. 31, § 148), under which the information was drawn, makes it perjury willfully and corruptly to swear falsely in any material matter to an oath legally administered in any "cause, matter or proceeding before any court, tribunal or public body or officer." While the taking of the testimony before the justice was not an action or special proceeding as defined by the code, it was beyond question a "proceeding" as defined by this court. (*Gordon v. The State ex rel.*, 4 Kan. 489, 490; *In re Tillery, Petitioner*, 43 Kan. 188, 192; *A. T. & S. F. Rld. Co. v. Brassfield*, 51 Kan. 167, 174; *Drumm v. Cessnum*, 61 Kan. 467.)

Complaint is made that the court refused to instruct the jury that each one must be satisfied beyond a reasonable doubt of the truth of every material allegation of the information. This would have been proper had no election been made by the state to rely on only one of the various assignments of perjury, but, having elected to rely on one only, this instruction, in order to be proper, should have been limited to the material allegations of such assignment; hence the refusal to give this instruction was not error.

It is also complained that the court did not obey the statute requiring an instruction upon the law applicable to the case, whether requested or not (Crim. Code, § 236), for the reason that the jury were not told that each one must find the defendant guilty beyond a reasonable doubt. While this was not done in so many words, we think it was substantially done when the jury were instructed that they must find the defendant

The State v. Smith.

guilty beyond a reasonable doubt, and that a reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence, "leaves the minds of the jurors in that condition that they can not say that they feel an abiding conviction to a moral certainty of the truth of the charge; that is, to a certainty that convinces and directs the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it." The average juror is usually fully advised of his prerogative to disagree with his fellow jurors, and the idea that in a criminal case a unanimous verdict is essential to a conviction is so thoroughly understood in this state that we think the language used by the court in the instruction given. was a sufficient compliance with the requirements of the statute.

The judgment of the trial court is affirmed.

WEST, J., dissents, stating his reasons in the opinion.

PORTER, J. (dissenting) : I agree with the writer of the opinion that there was a variance in the proof and the charge upon which the state elected to stand for a conviction and upon which the court instructed the jury, and therefore I dissent.